UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  1/15/2025
```

-------------------------------------------------------------------X

P.C.,

                  Plaintiff,

          -v-

PETER V. DRISCOLL, M.D., ANTHONY R. PERKINS,
M.D., PERKINS MEDICAL CARE N.J., P.C., SERGEY
VOSKIN, M.D., ELLA VOSKRESENSKIY AKA ELLA
VOSKIN, NYC MEDICAL PRACTICE, P.C. D/B/A
GOALS AESTHETICS & PLASTIC SURGERY, and
MY GOALS SOLUTIONS, INC.,

                  Defendants.

-------------------------------------------------------------------X

24-cv-2496 (LJL)

OPINION & ORDER

LEWIS J. LIMAN, United States District Judge:

       Plaintiff has filed an amended complaint under the pseudonym P.C., bringing claims of medical malpractice, intentional infliction of emotional distress, negligent infliction of emotional distress, respondeat superior, negligent hiring, retention, and supervision, and violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq*. Dkt. No. 47. Defendant Perkins Medical Care N.J., P.C. ("Perkins Medical") moves, pursuant to Federal Rule of Civil Procedure 12(b)(2)–(3) and (6), to dismiss the amended complaint's claims against it. Dkt. No. 49. Defendant NYC Medical Practice, P.C. ("NYCMP") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), or in the alternative, to dismiss the amended complaint's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(3) and (6). Dkt. No. 52. Defendants My Goals Solutions, Inc. ("Goals Solutions"), Sergey Voskin, MD, and Ella Voskin jointly move, pursuant to the Federal Arbitration Act ("FAA") to compel arbitration, or in the

alternative to dismiss the amended complaint's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(3) and (6).  Dkt. No. 57.[1]

For the reasons that follow, Moving Defendants' motions to dismiss are granted.

## BACKGROUND

For the purposes of the motions to dismiss, the Court assumes the truth of the well-pleaded allegations of the amended complaint.  *See* Dkt. No. 47.

### A.    The Parties

Plaintiff is a resident of Allegheny, Pennsylvania.  *Id.* ¶ 1.

Perkins Medical is a professional corporation with a principal place of business in Ridgefield, New Jersey.  *Id.* ¶ 3.  Defendant Anthony Perkins, M.D. ("Perkins") is a New York resident.  *Id.* ¶ 4.  He is the principal of Perkins Medical.  *Id.*[2]  Perkins worked in New York State and had a personal office in New York City.  *Id.* ¶ 12.

Defendant NYCMP is a corporation with a principal place of business in New York, New York.  *Id.* ¶ 5.  Defendant Sergey Voskin is the principal of NYCMP and a resident of Brooklyn, New York.  *Id.* ¶ 7.  Defendant Ella Voskresenskiy, a/k/a Ella Voskin, is a principal and supervisor for advertising and social media of NYCMP.  *Id.* ¶ 8.[3]  She is married to Sergey Voskin and resides in Brooklyn, New York.  *Id.*  She controls the Instagram account @goalsplasticsurgery from New York.

---

[1] For the purposes of this motion, the Court refers to Perkins Medical, NYCMP, Goals Solutions, and Sergey and Ella Voskin, collectively, as "Moving Defendants."

[2] Perkins' declaration also identifies him as the "president and shareholder" of Perkins Medical. Dkt. No. 51 ¶ 1.

[3] Ella Voskin's declaration states that her last name is Voskin, not Voskresenskiy and that while Voskresenskiy was her name "well over a decade ago," she changed it when she became a citizen of the United States.  Dkt. No. 54. ¶ 3.  The Court will use the name "Ella Voskin."

Goals Solutions is a corporation with a principal place of business in New York, New York. *Id.* ¶ 10.  The amended complaint states that Goals Solutions at all relevant times "provided administrative services for [NYCMP] and/or Perkins Medical."  *Id.*

Goals Solutions, NYCMP, and Perkins Medical held themselves out to the public as Goals Aesthetics and Plastic Surgery ("Goals").  *Id.* ¶ 14.  Goals Aesthetics and Plastic Surgery is registered as a trade name in New York.  *Id.* ¶ 15.  Perkins was the medical director for a Goals Aesthetics and Plastic Surgery medical facility located at 605 Broad Avenue, Ridgefield, New Jersey ("Goals Medical Facility").  The Goals Medical Facility was managed, directed, and/or controlled by Perkins, Goals, Ella Voskin, and Sergey Voskin.  Dkt. No. 47 ¶ 11.

Defendant Peter Driscoll, MD ("Driscoll") is a New Jersey resident.  *Id.* ¶ 2.  He is a doctor whom Plaintiff believed worked for Goals.  *Id.* ¶ 21.

### B.    Prior Complaints Against Peter Driscoll

Several complaints were made against Peter Driscoll in connection with his practice of medicine in Texas and California.  *Id.* ¶ 35.

In August 2015, the State of Texas medical board placed Driscoll on probation for unprofessional or dishonorable conduct and for malpractice.  *Id.* ¶ 35(a).  As part of that probation, the medical board required that Driscoll be monitored by another physician while with patients. *Id.*  In August 2016, the State of Texas medical board filed a complaint against Driscoll for failing to comply with rules related to office-based anesthesia services, in addition to other claims.  *Id.* ¶ 35(b).  In April 2017, the State of Texas medical board filed a complaint against Driscoll for malpractice because he moved and did not inform patients.  *Id.* ¶ 35(c).  The board scheduled a hearing on the merits of the complaints for January 2019, but a few months prior to the hearing, in or around October 2018, Driscoll requested that the State of Texas medical board cancel his

license. *Id.* ¶ 35(d). The board cancelled Driscoll's license on October 4, 2018, and dismissed all complaints against him on October 8, 2018. *Id.*

In March or April of 2017, the State of California medical board placed Driscoll on probation for malpractice. *Id.* ¶ 35(e). The terms of the probation required that Driscoll agree to be monitored by another physician in order to meet with clients and practice medicine, that he refrain from engaging in the solo practice of medicine, that he take an ethics course, and that he enroll in a clinical competence assessment program. *Id.* In September 2019, the State of California medical board filed an amended complaint against Driscoll for several incidents of malpractice and sought revocation of his license. *Id.* ¶ 35(f). On February 7, 2020, the board entered an order requiring Driscoll to surrender his California medical license. *Id.* ¶ 35(g).

Plaintiff alleges that there were also several incidents in which Driscoll acted inappropriately at the Goals Medical Facility. On or about March 3, 2022, Driscoll left a patient on the surgical table in the operating room for an extended time and staff could not locate him. *Id.* ¶ 37(a). On or about March 23, 2022, Driscoll left a patient alone prior to discharge. *Id.* ¶ 37(b). On or about April 26, 2022, Driscoll performed a follow-up procedure on a Goals staff member where the staff member felt uncomfortable being alone with Driscoll, and shortly thereafter, a notice was sent to the surgical supervisor and to Driscoll stating that Driscoll should never be left alone with a patient without a female employee present. *Id.* ¶ 37(c). In or about May 2022, Driscoll left his phone connected to the Bluetooth speakers in an operating room while he went to the bathroom, and staff heard pornography play from his phone to the Bluetooth speakers for an extended period of time. *Id.* ¶ 37(d). In or about May 2022, a female employee or agent of Goals reported to management that she had been sexually harassed by Driscoll.

Ella Voskin, Sergey Voskin, and Goals represented to Plaintiff and to the public that Goals' surgeons were "double if not triple board-certified plastic surgeons." *Id.* ¶ 33.  Peter Driscoll was board certified by the American Board of Otolaryngology and was licensed to practice medicine and surgery in New Jersey, but he was not double or triple board-certified. *Id.* ¶ 34.

### C.    The Surgery

On February 14, 2022, Plaintiff attended a virtual consultation with a representative of Goals concerning a desired surgical operation. *Id.* ¶¶ 23, 27–28.  The representative was located in New York, New York at the time. *Id.* ¶¶ 27–28.

On June 7, 2022, Plaintiff reported to the Goals Medical Facility to undergo a scheduled liposuction of the abdomen and a double Brazilian Butt Lift. *Id.* ¶ 22.  Defendants assigned Peter Driscoll to be Plaintiff's surgeon. *Id.*; *see also* Dkt. No. 51 ¶ 3; Dkt. No. 64-12[4] at 1 (stating that the assigned surgeon was "Dr Driscol").  No chaperone was present.  Dkt. No. 47 ¶ 47.  Plaintiff alleges that during the procedure, Driscoll "attempted to solicit sexual contact with Plaintiff[,] made inappropriate sexual comments to Plaintiff[,] made unwanted and unwelcome sexual contact with Plaintiff[,] and unnecessarily exposed Plaintiff's body." *Id.* ¶¶ 48–49.  Plaintiff also alleges that Defendants "[f]ailed to meet with, properly evaluate, obtain medical history, or perform a physical examination of Plaintiff prior to the procedure" and "[f]ailed to complete and maintain required medical records regarding the procedure." *Id.* ¶ 49.

### PROCEDURAL HISTORY

Plaintiff filed this suit pseudonymously on April 2, 2024.  Dkt. Nos. 1, 4.  As an attachment to the complaint, Plaintiff filed an affidavit of Howard Neil Langstein, M.D., stating that Langstein is a certified plastic surgeon and that based upon the medical records and documents he reviewed,

---

[4] Citations to this document refer to the pagination that appears in the ECF heading.

it is his opinion, that "there exists a reasonable probability that the care provided to P.C. by the named Defendants fell outside the scope of accepted professional standards as alleged in P.C.'s Complaint." Dkt. No. 1-1 ¶¶ 1, 3.

Plaintiff filed an amended complaint on June 28, 2024. Dkt. No. 47. The amended complaint asserts claims for (1) medical malpractice against Driscoll; (2) intentional infliction of emotional distress against Driscoll; (3) medical malpractice against NYCMP, Goals Solutions, and Perkins Medical; (4) negligent infliction of emotional distress ("NIED") against NYCMP, Goals Solutions, Perkins Medical, Driscoll, Perkins, and Sergey Voskin; (5) respondeat superior against NYCMP, Goals Solutions, Perkins Medical, Perkins, and Sergey Voskin; (6) negligent hiring, retention, and supervision against NYCMP, Goals Solutions, Perkins Medical, Perkins, and Sergey Voskin; and (7) consumer fraud against all Defendants. *Id.*

On July 17, 2024, Perkins Medical moved, pursuant to Federal Rule of Civil Procedure 12(b)(2)–(3), and (6), to dismiss the amended complaint's claims against it. Dkt. No. 49. Perkins Medical filed a memorandum of law and a declaration by Perkins in support of the motion. Dkt. Nos. 50–51. Plaintiff filed a memorandum of law and a declaration in opposition to the motion to dismiss on July 29, 2024. Dkt. Nos. 65–66.

On July 17, 2024, NYCMP moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), or in the alternative, to dismiss the amended complaint's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(3) and (6). Dkt. No. 52. NYCMP filed a memorandum of law, a declaration of Ella Voskin, and two declarations of Sergey Voskin in support of the motion. Dkt. Nos. 53–56. Plaintiff filed a memorandum of law and a declaration in opposition to the motion. Dkt. Nos. 63–64.

On July 17, 2024, Goals Solutions, Sergey Voskin, and Ella Voskin jointly moved to compel arbitration, or. in the alternative, to dismiss the amended complaint's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(3) and (6). Dkt. No. 57. Goals Solutions filed a memorandum of law, declarations of Ella Voskin and Sergey Voskin, and an attorney declaration in support of the motion. Dkt. Nos. 58–61. On July 29, 2024, Plaintiff filed a memorandum of law and a declaration in opposition to the motion. Dkt. Nos. 67–68.

On August 5, 2024, Defendants filed an omnibus reply memorandum of law in support of the motions to dismiss, the motion for summary judgment, and the motion to compel arbitration. Dkt. No. 72. Defendants attached a declaration of Sergey Voskin and Plaintiff's responses to NYCMP's Local Rule 56.1 Statement of Material Facts. Dkt. No. 72-1.[5]

On October 3, 2024, Perkins filed an answer to the amended complaint. Dkt. No. 86. Driscoll has not answered the amended complaint or otherwise appeared in this case to date.

## LEGAL STANDARD

Under 28 U.S.C. § 1406(a), a district court shall dismiss (or, in some circumstances, transfer) "a case laying venue in the wrong division or district." 28 U.S.C. § 1406(a). "Rule 12(b)(3) provides the mechanism by which a party can ask a court to do so." *Geffner v. Quanta Servs., Inc.*, 2018 WL 6807388, at *2 (S.D.N.Y. Dec. 27, 2018). "[O]n a motion to dismiss for improper venue pursuant to Rule 12(b)(3), 'the burden of proof lies with the plaintiff to show that venue is proper.'" *Spiciarich v. Mexican Radio Corp.*, 2015 WL 4191532, at *2 (S.D.N.Y. July 10, 2015) (quoting *Cartier v. Micha, Inc.*, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007)). Upon a finding of improper venue, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.

---

[5] Neither NYCMP's Local Rule 56.1 Statement nor Plaintiff's responses thereto had been previously submitted to the Court.

§ 1406(a).  "It is well established that a plaintiff must establish proper venue for each defendant." *Berall v. Teleflex Med. Inc.*, 2022 WL 2666070, at *3 (S.D.N.Y. July 11, 2022); *accord Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 363 (E.D.N.Y. 2007) (Bianco, J.).

"A court applies the same standard of review in Rule 12(b)(3) dismissals as Rule 12(b)(2) dismissals for lack of jurisdiction."  *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014). "The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (quoting *E.P.A. ex rel. McKeown v. Port Auth.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).  "[I]n deciding a motion to dismiss for improper venue, the 'court may examine facts outside the complaint to determine whether venue is proper.'"  *Id.* (quoting *McKeown*, 162 F. Supp. 2d at 183).

## DISCUSSION

Defendants assert a host of bases for dismissal, including lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), and failure to state a claim to relief pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. Nos. 49, 52, 57.  Because the Court finds that venue is improper with respect to the Moving Defendants, the Court does not address the parties' claims with respect to personal jurisdiction, subject matter jurisdiction, or the legal sufficiency of Plaintiff's claims to relief.

## I.    IMPROPER VENUE

Defendants argue that the amended complaint must be dismissed because venue is improper.  Dkt. No. 50 at 16–17; Dkt. No. 53 at 10–11; Dkt. No. 58 at 12–13; Dkt. No. 72 at 2–4.

Plaintiff argues that venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391(b)(2).  Dkt. No. 63 at 6–9; Dkt. No. 65 at 9–12; Dkt. No. 67 at 6–9.[6]

Section 1391(b)(2) provides that venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b).  "[W]hen a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate."  *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005).  "First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims."  *Id.*  "Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed."  *Id.*  "[F]or venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).  "The circuit has explained further that the substantiality inquiry is more qualitative than quantitative and should focus on the relevant activities of the defendant, not the plaintiff."  *Micromem Techs., Inc. v. Dreifus Assocs. Ltd.*, 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015) (citing *Daniel*, 428 F.3d at 432–33); *see also Perrone v. Catamount Ski Resort, LLC*, 2020 WL 2538464, at *6 (S.D.N.Y. May 19, 2020) ("[B]y referring to 'events and omissions giving rise to

---

[6] The amended complaint states that venue is also proper pursuant to 28 U.S.C. § 1391(b)(3).  Dkt No. 47 ¶ 18.  However, Plaintiff abandons that argument by failing to raise it in opposition to the motions to dismiss.  *See Martinez v. Town of Clarkstown*, 2024 WL 4124717, at *4 (S.D.N.Y. Sept. 9, 2024).  Even if the claim were not abandoned, Section 1391(b)(3) would not make venue appropriate in the Southern District of New York.  Often called the "fallback provision," it provides that venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" but only "if there is no district in which an action may otherwise be brought as provided in this section." 28 U.S.C. § 1391(b)(3); *see Nelson v. Wells Fargo Bank, N.A.*, 2019 WL 2514229, at *9 (S.D.N.Y. June 18, 2019).  Because venue would be proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 1391(b)(3) is inapplicable.

the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff." (citation omitted)); *Slobig v. Gannuscia*, 2018 WL 1305459, at *3 (S.D.N.Y. Mar. 9, 2018) (holding that "the acts of Defendants, not the activities of or harm to Plaintiff, determine where venue properly lies" (citation omitted)).

The venue requirement is intended "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979).[7]  "[I]n the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim." *Leroy*, 443 U.S. at 185; *see also id.* at 186–87 (rejecting interpretation of the venue statute that "would leave the venue decision entirely in the hands of plaintiffs, rather than making it 'primarily a matter of convenience of litigants and witnesses.'" (quoting *Denver & R. G. W. R. Co. v. Bhd. of R. R. Trainmen*, 387 U.S. 556, 560 (1967))).  Accordingly, "[m]ultiple judicial districts may be appropriate venues under this provision as long as a substantial part of the underlying events took place in each." *Dicks v. Cooks Junction, Inc.*, 2023 WL 2775830, at *5 (S.D.N.Y. Apr. 4, 2023); *see Lehrer v. J&M Monitoring, Inc.*, 2022 WL 2392441, at *7 (S.D.N.Y. July 1, 2022).

"The plaintiff bears the burden of showing that venue is proper once an objection is raised, and it must show that venue is proper for each claim against each defendant." *Concesionaria*, 307

---

[7] Although *Leroy* predated the 1990 amendment to 28 U.S.C. 1391, the Second Circuit has noted that "*Leroy* and other [pre-amendment] precedents remain important sources of guidance" because that amendment was "at most a marginal expansion of the venue provision." *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992).

F. Supp. 2d at 558; *Sea Tow*, 472 F. Supp. 2d at 363.  In deciding a claim for improper venue, the court "must accept the facts alleged in the complaint and construe all reasonable inferences in the plaintiff's favor."  *Matera v. Native Eyewear, Inc.*, 355 F. Supp. 2d 680, 681 (E.D.N.Y. 2005).  However, general and conclusory allegations cannot support a finding of venue under 28 U.S.C. § 1391(b).  *See Filsoof v. Wheelock St. Cap., LLC*, 2023 WL 8280496, at *4 n.5 (S.D.N.Y. Nov. 30, 2023) (citing *G.F.C. Fashions, Ltd. v. Goody's Family Clothing, Inc.*, 1998 WL 78292, at *3 n.4 (S.D.N.Y. Feb. 24, 1998)).  Where the act giving rise to the claim is an omission, for the purposes of venue, the conduct is situated wherever those omitted acts should have been performed.  *See Creative Socio-Medics, Corp. v. City of Richmond*, 219 F. Supp. 2d 300, 309 (E.D.N.Y. 2002); *Geller Media Mgmt., Inc. v. Beaudreault*, 910 F. Supp. 135, 138 (S.D.N.Y. 1996); *see also State Tchrs. Ret. Bd. v. Fluor Corp.*, 500 F. Supp. 278, 290 (S.D.N.Y. 1980) ("It strains credulity to extend a non-act beyond the territorial limits of its existence."), *rev'd in part on other grounds*, 654 F.2d 843 (2d Cir. 1981).

Plaintiff asserts claims against the Moving Defendants for medical malpractice, Dkt No. 47 ¶¶ 57–60, NIED, *id.* ¶¶ 51–65, negligently hiring, retaining, and supervising Driscoll, *id.* ¶¶ 74–82, and consumer fraud, *id.* ¶¶ 83–86.[8]

Plaintiff does not properly allege venue with respect to her medical malpractice claims against the Moving Defendants.  A claim for medical malpractice is based on a physician's deviation from the standard of care that she assumes to the patient.  *See Szemple v. Univ. of Med. & Dentistry of N.J.*, 2017 WL 4538929, at *7 (D.N.J. Oct. 11, 2017) (To properly state a claim for

---

[8] Plaintiff also asserts a claim for *respondeat superior*, *id.* ¶¶ 66–73, but there is no such claim under New York or New Jersey law.  *See Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 110 n.6, 112 (E.D.N.Y. 2011); *Galicki v. New Jersey*, 2016 WL 4950995, at *32 (D.N.J. Sept. 15, 2016).

medical malpractice under New Jersey law, "Plaintiff must show: (1) a deviation from the standard of care; (2) an injury proximately caused by that deviation; and (3) damages suffered as a result." (citing *Komlodi v. Picciano,* 217 N.J. 387, 409 (N.J. 2014))).[9]  The duty is based on the physician's assumption of a professional responsibility towards the patient and not primarily on the contract pursuant to which the physician performs her services.  *See* W. Keeton, et al., Prosser and Keeton on Law of Torts § 32 (5th ed. 1984) ("Prosser & Keeton") ("[B]y undertaking to render medical services, even [if] gratuitously, a doctor will ordinarily be understood to hold himself out as having standard professional skill and knowledge."); Restatement (Second) of Torts § 299A (1965) (similar).[10]

The existence of a formal agreement to perform medical services is neither a necessary nor a sufficient condition to sufficiently plead medical malpractice.  *See Perna v. Pirozzi*, 457 A.2d 431, 441 & n.4 (N.J. 1983); *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. App. Div. 2007).  It follows therefore that any Defendant's agreement in the Southern District of New York to perform medical services elsewhere does not alone support venue in the Southern District of New York any more than a lawyer's signing of a retainer letter in the Southern District to perform services elsewhere would supply venue in the Southern District.  *See Okereke v. Allen*, 2015 WL 5508888,

---

[9] The parties agree that New Jersey law would apply to Plaintiff's medical malpractice claims. Dkt. No. 65 at 13–14; Dkt. No. 72 at 6–7; *see Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting *Tehran-Berkeley Civil & Env't Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989))); *accord Diaz-Roa v. Hermes L., P.C.*, 2024 WL 4866450, at *37 n.26 (S.D.N.Y. Nov. 21, 2024); *Pac. Indem. Co. v. Kiton Corp.*, 2022 WL 4237092, at *2 (S.D.N.Y. Sept. 14, 2022).

[10] The tentative draft of the Restatement (Third) of Torts notes that agreements may affect medical liability in some circumstances, such as when the parties agree to take a nonstandard approach to care or to curtail a patient's rights to pursue a medical claim, but that "[a]n agreement that prospectively eliminates or substantially curtails the liability of a medical professional or institution to a patient for breach of [certain duties] is unenforceable."  Restatement (Third) of Torts: Medical Malpractice A TD No 2 §§ 9–11 (2024).

at *3 (S.D.N.Y. July 29, 2015), *report and recommendation adopted*, 2015 WL 5547388 (S.D.N.Y. Sept. 17, 2015); *see, e.g.*, *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F. Supp. 731, 736 (S.D.N.Y. 1996) (venue for claim regarding attorneys' breach of retention agreement existed in New York, where the agreement was signed, but venue for legal malpractice claim could only exist in Pennsylvania or Delaware, "where defendants reside and where they prepared for and litigated the [u]nderlying [a]ction"). Plaintiff must allege facts relating to "the alleged malpractice" itself and not simply on the initial formation of the relationship pursuant to which the defendant performed acts that constituted malpractice. *Okereke*, 2015 WL 550888, at *3 (quoting *Cold Spring Harbor Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 555 (E.D.N.Y. 2011)); *see also Fluor*, 500 F. Supp. at 290.

Plaintiff's medical malpractice claim arises from Driscoll's conduct during a scheduled liposuction of the abdomen and double Brazilian Butt Lift performed on Plaintiff on June 7, 2022, at the Goals Medical Facility on Broad Avenue in Ridgefield, New Jersey. Dkt. No. 47 ¶¶ 11, 22. All of the activities of Defendants relevant to the medical malpractice claim occurred in New Jersey. Plaintiff alleges that during the June 7, 2022 surgery in New Jersey, Driscoll committed medical malpractice and willfully and maliciously sexually harassed, sought, and solicited sexual contact with Plaintiff, and engaged in non-consensual sexual contact with Plaintiff. *Id.* ¶ 29. Plaintiff does not dispute that Driscoll's alleged sexual misconduct took place exclusively within New Jersey and not in New York. Dkt No. 47 ¶¶ 29, 48; Dkt. No. 63 at 8; Dkt. No. 65 at 11; Dkt. No. 67 at 8.

The allegations that Plaintiff paid the billing representative of Goals Aesthetics, which is a New York corporation and located in New York, Dkt. No. 47 ¶ 26, that Goals "from New York" was "handling various billing and patient functions around the medical care and treatment and

processed patients for surgery," *id.* ¶ 28, and that Defendants "controlled from New York which facility would perform the surgery for patients such as Plaintiff," *id.*, do not support venue in the Southern District of New York.  Those activities are not relevant or significant to the medical malpractice claim.  *See Friedman v. Revenue Mgmt. of N.Y., Inc.*, 38 F.3d 668, 672 (2d Cir. 1994) (dismissing case for improper venue where allegations that the defendant "is a New York corporation that services New York hospitals, collects money from New York debtors, employs a New York law firm, and sues in New York" did not constitute a substantial part of the events alleged).[11]  Each of those is an "incidental event[] that ha[s] only some tangential connection with the dispute in litigation" and therefore is not enough to support venue.  *Okereke*, 2015 WL 550888, at *3 (citation omitted).  Nothing turns on the truth or falsity of the allegations.

Plaintiff also makes boilerplate, conclusory assertions that Driscoll, NYCMP, Goals Solutions, and Perkins Medical  "[f]ailed to obtain informed consent from Plaintiff," and "[f]ailed to obtain proper consent."  *Id.* ¶¶ 49(a), 59(b), (j); *see also id.* ¶ 59(c) (alleging that Defendants "[f]ailed to notify Plaintiff and obtain her consent to be left alone with him in the operating room").  The failure to obtain informed consent may give rise to a claim for medical negligence under New Jersey law.  *See Howard v. Univ. of Med. & Dentistry of N.J.*, 800 A.2d 73, 77 (N.J. 2002) ("[I]t is now clear that deviation from the standard of care and failure to obtain informed consent are simply sub-groups of a broad claim of medical negligence." (quoting *Teilhaber v. Greene*, 727 A.2d 518, 523 (N.J. App. Div. 1999))); *see also Hinman v. Russo*, 267 F. App'x 137, 138 (3d Cir. 2008) (setting forth the standard for claim of failure to obtain informed consent).  However,

---

[11] Furthermore, to the extent that Plaintiff's proffered documents show that her payments were accepted in Brooklyn, *see* Dkt. No 64 ¶ 6; Dkt. No. 64-4, that action took place in the Eastern District of New York, not the Southern.  *See Mitchell v. City of New York*, 2013 WL 5942236, at *3 (S.D.N.Y. Nov. 6, 2013).

Plaintiff's allegations of missing consent are conclusory. She alleges no facts that would give rise to a claim of failure to obtain informed consent, much less facts that would establish that the duty to obtain consent arose in the Southern District of New York and thus that significant or material events relating to her claim occurred in this District. *See Creative Socio-Medic*, 219 F. Supp. 2d at 309. Plaintiff fails to identify where her informed consent should have been, but was not, obtained and does not locate that omission in this District. *See Shih v. Greater Newark Econ. Corp.*, 2023 WL 7308456, at *2 (S.D.N.Y. Oct. 4, 2023) (transferring venue to the District of New Jersey because "[w]hile it is possible . . . that this court could be a proper venue for this action under Section 1391(b)(1) or (2), Plaintiff's allegations as to why this court is a proper venue are conclusory and lack factual detail").

Similarly, with regard to Defendants' failures to meet with, evaluate or physically examine Plaintiff, Plaintiff does not identify where those actions should have taken place. She alleges that she had a consultation with Defendants "on or about February 14, 2022," and that "[p]rior to the June 7, 2023, surgery, [she] had a virtual consultation with Defendants' representative, which is located in this District in Harlem, NY." Dkt. No. 47 ¶¶ 23, 27. Perkins' declaration confirms that Plaintiff virtually attended a BMI checkup at his office in this District where she provided her height and weight but did not receive any other medical care. Dkt. No. 51 ¶ 16. However, Plaintiff does not state whether that virtual consultation was deficient in some way, whether Defendants were obligated to perform a different pre-surgery consultation, or whether Plaintiff contends that the evaluation and examination conducted at the June 7, 2022 procedure were deficient. Plaintiff does not allege that any additional consultations took place in New York. Although Plaintiff alleges that all communications she had with Defendants prior to the surgery were through representatives of Goals Aesthetics, "a trade name believed to be only registered in the State of

New York and upon information and belief is operating from New York," Dkt. No. 47 ¶ 28, Perkins avers that all of Plaintiff's other care took place in New Jersey and that Plaintiff's calls were taken by call center employees working in the Dominican Republic. *Id.* ¶¶ 16–17.

Plaintiff also does not establish venue for her claims for negligent hiring, retention, and supervision. Claims for negligent hiring, retention, and supervision, like claims brought pursuant to the doctrine of *respondeat superior*, provide a path for a plaintiff seeking to recover from an employer for injuries caused by an employee's misconduct. However, there are key differences between the two that guide the analysis of what conduct courts should examine when determining venue for negligent hiring, retention, and supervision claims.

According to the general rule, a defendant "has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *D'Amico v. Christie*, 518 N.E.2d 896, 901 (N.Y. 1987); *see* Restatement (Second) of Torts § 315. However, "[u]nder the doctrine of respondeat superior . . . an employer may be liable for acts of its employees in the course and scope of employment." *D'Amico*, 518 N.E.2d at 901–02; *see Rivera v. State*, 142 N.E.3d 641, 645 (N.Y. 2019); Restatement (Second) of Torts § 317. The doctrine does not create a cause of action separate from the predicate tort but instead confers a form of "vicarious," or "secondary," liability rooted in the agency relationship. *See Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 n.7 (2d Cir. 2015); *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126, 130 (2d Cir. 2003); Restatement (Third) Of Agency § 7.07 (2006); Prosser & Keeton § 69 (noting that *respondeat superior* is a form of "imputed negligence"). As such, the plaintiff need not allege any misconduct by the employer and must only establish the employee's underlying tort and that the tort was "generally foreseeable and a natural incident of the employment," *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 808

N.E.2d 1263, 1266 (N.Y. 2004), which courts often refer to as being "within the scope of his or her employment," *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129–30 (2d Cir. 2019) (citation omitted).  *See* 53 N.Y. Jur. 2d Employment Relations §§ 396, 399 (2d ed. 2024); *Karaduman v. Newsday, Inc.*, 416 N.E.2d 557, 563–64 (N.Y. 1980); *Nw. Nat. Bank of Minneapolis v. Fox & Co.*, 102 F.R.D. 507, 512 (S.D.N.Y. 1984).  For venue purposes, the relevant activities are those that take place in connection with the underlying tort; the location of the employer is not significant. *See Rollins v. Green*, 2007 WL 2186895, at *9 (S.D.N.Y. July 26, 2007); *Sargent v. Budget Rent-A-Car Corp.*, 1996 WL 413725, at *2–3 (S.D.N.Y. July 24, 1996).

Although the claim of negligent hiring, retention, and supervision, like the doctrine of *respondent superior*, provide a means by which the master may be held liable for the torts of the servant, negligent hiring, retention and supervision is a standalone claim that may be brought directly against an employer.  *See Williams v. City of New York*, 2024 WL 3967307, at *14–15 (S.D.N.Y. Aug. 28, 2024); *Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653, 669–70 (S.D.N.Y. 2020); Restatement (Second) of Torts §§ 317, 319; 53 N.Y. Jur. 2d Employment Relations §§ 391, 393.  It requires proof of facts besides the underlying tort and the employment relationship.  To prevail on a claim for negligent hiring, supervision, and retention, a plaintiff must allege "(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels."  *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 361 (S.D.N.Y. 2021) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).  Distinct from *respondeat superior*, the employee's tort must necessarily fall *outside* the scope of their employment.  *See Schoolcraft v. City of New York*, 103 F.Supp.3d 465, 522 (S.D.N.Y. 2015) (collecting cases);

*accord I.M. v. United States*, 362 F. Supp. 3d 161, 207 (S.D.N.Y. 2019).[12]  The underlying tort still determines the plaintiff's recoverable damages.  *See Gonzalez v. City of New York*, 133 A.D.3d 65, 68 (1st Dep't 2015); *Gray v. Schenectady City Sch. Dist.*, 927 N.Y.S.2d 442, 445–46 (3d Dep't 2011).  However, the employee's wrongful conduct is not itself imputed to the Defendant.  A claim for negligent hiring, supervision, and retention rests upon a form of direct liability that stems from the employer's own negligence "quite apart from any question of vicarious liability."  Prosser & Keeton § 71; *see Francois v. Metro-N. Commuter R.R. Co.*, 107 F.4th 67, 72 (2d Cir. 2024) (distinguishing between direct liability for negligent hiring claim and vicarious liability pursuant to *respondeat superior*); *Brown v. Vill. of Pelham*, 2010 WL 11712459, at *1 (S.D.N.Y. July 2, 2010) (distinguishing between direct liability for negligent hiring, training, and supervision claims and vicarious liability pursuant to *respondeat superior*); 53 N.Y. Jur. 2d Employment Relations §§ 391, 393.  "The employer's negligence lies in having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring, . . . retention, or

---

[12] "Under New York law, claims for negligent hiring, supervision or retention are generally not permitted where the agency relationship necessary for *respondeat superior* is established."  *Lee v. J.B. Hunt Transp., Inc.*, 308 F. Supp. 2d 310, 312 (S.D.N.Y. 2004) (citing *Karoon v. N.Y.C. Transit Auth.*, 659 N.Y.S.2d 27, 29 (1st Dep't 1997)); *accord Rich*, 939 F.3d at 129–30 ("[T]he employee also must not be acting within the scope of his or her employment; [for] in that situation the employer [would] only be liable . . . vicariously under the theory of respondeat superior, [and] not for negligent supervision or retention." (quoting *Gray v. Schenectady City Sch. Dist.*, 927 N.Y.S.2d 442, 446 (3d Dep't 2011))); *Marotta v. Palm Mgmt. Corp.*, 2009 WL 497568, at *4 (S.D.N.Y. Feb. 25, 2009); *May v. Bd. of Educ. of Harrison Cent. Sch. Dist.*, 2005 WL 8180007, at *8 (S.D.N.Y. Sept. 2, 2005).  This rule avoids duplicative claims "because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay for the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training."  *Lee*, 308 F. Supp. 2d at 312 (quoting *Karoon*, 659 N.Y.S.2d at 29).

supervision of the employee." *Sayegh v. City of Yonkers*, 228 A.D.3d 690, 691 (2d Dep't 2024) (citation omitted); *see Gray*, 927 N.Y.S.2d at 446.[13]

Therefore, unlike a claim based on *respondeat superior*, which is committed wherever the underlying misconduct is committed, the tort of negligent hiring, supervision, and retention involves events both at the location of hiring and supervision and at the location of the employee's misconduct. The tort requires proof of the employer's negligence either in the form of engaging an employee despite knowing the employee's propensity to engage in injurious conduct and/or in neglecting to provide appropriate supervision and failing to terminate the dangerous employee. The locus of relevant locations includes that where the employment decisions are made and implemented. *See Beattie v. United States*, 592 F. Supp. 780, 784–85 (D.D.C. 1984) (holding that where the plaintiff alleged the United States Department of Defense "failed to use due care in the selection, training, and supervision of the naval personnel at [a naval base in Antartica] and to establish reasonable standards of training and performance for the operation of the facilities at the base," the negligent acts at issue took place in the District of Columbia, making venue appropriate at the "Seat of the Government" (quoting *In re Air Crash Disaster Near Saigon, Vietnam on April 4, 1975*, 476 F.Supp. 521, 527 (D.D.C. 1979))) (collecting cases), *aff'd*, 756 F.2d 91, 100 (D.C. Cir. 1984) (noting that so-called "headquarters claims alleg[ing] negligence by officers of the

---

[13] As the Restatements (Second) of Torts notes:

> There may be circumstances in which the only effective control which the master can exercise over the conduct of his servant is to discharge the servant. Therefore the master may subject himself to liability . . . by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others. This is true although he has without success made every other effort to prevent their misconduct by the exercise of his authority as master.

Restatement (Second) of Torts § 317, cmt. c.

United States, occurring in Washington, D.C., and in the Pentagon" are properly venued there because the "complain[] of acts or omissions within the jurisdiction of the District Court for the District of Columbia"); *Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose*, 235 F. App'x 776, 780 & n.6 (2d Cir. 2007) (summary order) (noting that claim against foreign sovereign for negligent supervision "arguably comes within the language of the third clause of 28 U.S.C. § 1605(a)(2), which renders sovereign immunity unavailable in any case 'in which the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that causes a direct effect in the United States'" because "the 'act outside the territory of the United States' would be [the sovereign's] negligent supervision of its present and former employees" who were in the United States). The decision to hire and retain an employee or contractor is made where the decision-maker is located at the time the decision is made. *See Chong v. Healthtronics, Inc.*, 2007 WL 1836831, at *12 (E.D.N.Y. June 20, 2007); *Litton v. Avomex Inc.*, 2010 WL 160121, at *16 (N.D.N.Y. Jan. 14, 2010). And negligent supervision will occur where supervision is effectuated. *See, e.g.*, *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–107 & n.1 (2d Cir. 2006); *Schechter v. Tauck Tours, Inc.*, 17 F. Supp. 2d 255, 260 (S.D.N.Y. 1998). This comports with the venue statute's purpose of guarding defendants by promoting fairness and convenience. *See Leroy*, 443 U.S. at 183–84; *Filsoof*, 2023 WL 8280496, at *4. If venue lies where the relevant decisions are made, it will be convenient for the witnesses with key information as to what the defendant knew about the employee's propensity to engage in misconduct at and after the time of hiring as well as information regarding the defendant's policies and conduct regarding supervision. *See Beattie*, 592 F. Supp. at 784 ("The appropriateness of District of Columbia law and venue are further supported by the fact that the necessary records

relating to United States naval operations in Antarctica, and more particularly the records pertaining to this particular crash, are located in the District of Columbia.").

Plaintiff alleges that Perkins, Sergey Voskin, and Goals failed to exercise reasonable care in hiring, supervising and retaining Driscoll "when they knew or should have reasonably known about Driscoll's unfitness, incompetence, or dangerous attributes" in light of the prior complaints against him. Dkt. No. 47 ¶¶ 79–81. But Plaintiff alleges no facts about where the hiring decision or any of Defendants' supervisory conduct occurred.

Plaintiff does not allege where any of NYCMP, Goals Solutions, or Sergey Voskin made the decisions to hire and retain Driscoll or from where they supervised him. She alleges merely that "[a]t all relevant times, Perkins, [Sergey] Voskin, and Goals were responsible for hiring, monitoring, overseeing, and credentialing competent physicians, nurses, supervisors, managers, and any other personnel necessary, including Driscoll." Dkt. No. 47 ¶ 30. Although Plaintiff alleges Sergey Voskin lives in the Eastern District of New York, *id.* ¶ 7, and that he "transacted, solicited, and conducted business in and from the State of New York," *id.* ¶ 9, she does not allege that he made hiring decisions or provided supervision for the Goals medical facility in Ridgewood, New Jersey from anywhere in New York, let alone from within this District. Similarly, Plaintiff alleges that NYCMP and Goals Solutions both have a principal executive office address of 251 W. 135th Street, New York, NY 10030, Dkt. No. 47 ¶¶ 5, 10, but does not allege or aver that hiring decisions and supervisory activities—or any work at all—would have been undertaken in that principal office. Because companies frequently operate through satellite offices and individuals, courts may not automatically infer that any company action transpired in the company's headquarters. *See Spiegel v. Schulmann*, 604 F.3d 72, 77 (2d Cir. 2010). Although Plaintiff's allegations leave open the possibility that venue as to Sergey Voskin, NYCMP, and Goals

Solutions could be proper here, that is insufficient to carry her burden of establishing a prima facie case. *See Shih*, 2023 WL 7308456, at *2.

Plaintiff does allege that Perkins, as medical director of the Goals Medical Facility and on behalf of Perkins Medical, worked out of the state of New York at all relevant times and that his personal office was located in New York City. Dkt. No. 47 ¶¶ 12, 30.[14]  As a threshold issue, those allegations are insufficient to permit the inference that Perkins worked out of his personal office when making the relevant hiring decision or conducting supervisory activities.  And even if the amended complaint supported that inference, Plaintiff's references to "New York" and to "New York City" still do not locate venue in this District.  "New York State includes four federal judicial districts, and New York City includes two." *Hollington v. CDM Fed. Programs Corp.*, 2022 WL 959569, at *6 (E.D.N.Y. Mar. 6, 2022), *report and recommendation adopted*, 2022 WL 955298 (E.D.N.Y. Mar. 30, 2022).  Although Plaintiff alleges that her virtual consultation was conducted by "Defendants' representative, which is located in this District, in Harlem, NY," Dkt. No. 47 ¶ 27, there is no basis for the court to infer that Perkins, who is a defendant, rather than a mere representative of the Defendants, also maintained his office in the Southern District of New York as opposed to potentially in the Eastern District.  *See Gulf Ins.*, 417 F.3d at 357–58 (holding that the complaint failed to establish venue in the Southern District of New York where it did not "unambiguously lay[] venue in the Southern District" as opposed to another district in the state).[15]

---

[14] Perkins' declaration disputes that allegation, stating that Perkins Medical is his New Jersey office and that Perkins Medical does not do any work in New York. Dkt. No. 51 ¶ 4.  However, while a court considering a motion to dismiss for improper venue may consider facts outside the pleadings, the court must view the facts in the light most favorable to the plaintiff, "and no disputed fact should be resolved against [the plaintiff] until it has had an opportunity to be heard." *Burrell v. State Farm Fire & Cas. Co.*, 2001 WL 797461, at *3 (S.D.N.Y. July 12, 2001); *see Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 558 (S.D.N.Y. 2004).

[15] Although the *Gulf Ins.* court declined to dismiss the complaint and instead permitted the plaintiff

Plaintiff therefore fails to show that any of the Moving Defendants' relevant hiring and retention decisions or supervisory conduct occurred within this District so as to make venue appropriate here.

Plaintiff's consumer fraud claim against all Defendants is based on their alleged misrepresentations and omissions regarding patient safety and the qualifications of Defendants' doctors. *Id.* ¶¶ 33–37, 85; Dkt. No. 63 at 18; Dkt. No. 65 at 21; Dkt. No. 67 at 18. Fraudulent misrepresentations, are "deemed to occur in the district where the misrepresentations are issued or the truth is withheld." *In re CenturyLink, Inc. Sec. Litig.*, 2014 WL 1089116, at *3 (S.D.N.Y. Mar. 18, 2014) (quoting *In re Stillwater Min. Co. Sec. Litig.*, 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003) (Chin, J.)). Plaintiff does not argue there is any connection between New York and the allegedly false misrepresentations and omissions upon which her consumer fraud claim is predicated. *See* Dkt. No. 47 ¶¶ 32–37; Dkt. No. 63 at 7–9, 18; Dkt. No. 65 at 10–12, 21; Dkt. No. 67 at 7–9, 18. Although she alleges that the Brooklyn-based Ella Voskin "was/is a principal and supervisor for advertising and social media" for NYCMP, Dkt. No. 47 ¶ 8, Plaintiff does not allege that any of the alleged misrepresentations were made through the social media account Ella Voskin allegedly managed from New York State or that Ella Voskin was otherwise responsible for any of the misrepresentations and issued them in this District. Nor does Plaintiff connect the misrepresentations to any other Defendant's conduct in this District.

---

to submit evidence in support of venue, it noted that "[w]e would not ordinarily give Gulf a second chance to submit evidence of key facts." *Id.* at 358 & n.3. The Second Circuit explained that its decision to permit additional evidence was because plaintiff's counsel indicated that he was in possession of a document unambiguously attesting that the policy at issue was negotiated, approved, and issued in the Southern District and defendants had not seriously disputed that the policy originated in the Southern District of New York. *See id.* ("[T]he complaint's reference to New York State rather than to the Southern District seems to us to have been an inadvertence.").

In sum, Plaintiff fails to discharge her burden of showing that a substantial part of the acts or omissions giving rise to any of her claims against Moving Defendants took place within this District and venue is therefore improper. *See Tobias v. Yale New Haven Health Servs. Corp.*, 2022 WL 1157243, at *1 (S.D.N.Y. Apr. 19, 2022).

## II.    TRANSFER

Where venue is not proper, a district court has discretion to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("Whether dismissal or transfer is appropriate lies within the sound discretion of the district court."); *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 172–73 (S.D.N.Y. 2009) ("If the chosen forum is improper, the Court has discretion to dismiss the case or to transfer the case to a district where venue is proper." (quoting *Blum v. Salomon*, 2006 WL 3851157, at *2 (S.D.N.Y. Dec. 28, 2006))). The District of New Jersey appears to the proper venue for suit against those Defendants as a substantial part of conduct giving rise to Plaintiff's claims occurred there.

"A district court appropriately exercises its discretion to transfer rather than dismiss a case in the interest of justice when a party timely files a complaint in an improper venue and, due to a statute of limitations, would be time-barred from refiling in another district." *K.A. Holdings Ltd. of NY v. Chagaris*, 2009 WL 10685159, at *5 (S.D.N.Y. Nov. 13, 2009); *Wood v. Byrd*, 2020 WL 550787, at *8 (S.D.N.Y. Feb. 4, 2020) ("Dismissal is a severe penalty that will not ordinarily be imposed where . . . the statute of limitations has run and plaintiff's claim will be essentially extinguished." (citation omitted)); *see Daniel*, 428 F.3d at 435 ("A compelling reason for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum." (punctuation omitted)). However, even where an action would be time-barred in the appropriate forum, dismissal may still be appropriate under certain circumstances,

such as when the case unquestionably lacks merit, the case was brought with knowledge that venue was improper, or transfer would otherwise reward plaintiffs for their lack of diligence in choosing a proper forum. *See Deskovic*, 673 F. Supp. 2d at 173 (citing cases). "[I]n most cases of improper venue the courts conclude that it is in the interest of justice to transfer." *Ne. Landscape & Masonry Assocs., Inc. v. State of Conn. Dep't of Lab.*, 2015 WL 8492755, at *5 (S.D.N.Y. Dec. 10, 2015) (citation omitted).

Here, if the Court dismisses the action as to the Moving Defendants, New Jersey's two-year statute of limitations for medical malpractice and negligence claims may bar re-filing of most of Plaintiff's claims against those Defendants. *See* N.J. Stat. Ann. § 2A:14-2; *Anderson v. Corr. Med. Servs., Inc.*, 2007 WL 2571953, at *1–2 (D.N.J. Aug. 31, 2007) (medical malpractice); *Kowalsky v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 5770523, at *5 (D.N.J. Sept. 30, 2015) (negligence). The case does not "unquestionably lack merit," and Moving Defendants do not argue that Plaintiff brought the case with the knowledge that venue was improper or that they would be prejudiced by transfer. *See Deskovic*, 673 F. Supp. 2d at 173–74. The Court finds that it is in the interest of justice to transfer, rather than dismiss, this case.

## CONCLUSION

Moving Defendants' motions to dismiss are GRANTED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 49, 52, and 57 and to transfer the files related to Plaintiff's claims against Defendants Perkins Medical Care N.J., P.C., NYC Medical Practice, P.C., My Goals Solutions, Inc., Sergey Voskin, MD, and Ella Voskin to the District of New Jersey.

The status conference scheduled for January 31, 2025, is cancelled.

SO ORDERED.

Dated: January 15, 2025
    New York, New York

_____
LEWIS J. LIMAN
United States District Judge